## Case No. 16,120.

### UNITED STATES v. RANDOLPH.

[1 Pittsb. Rep. 24; 1 Pittsb. Leg. J. 21.]

Circuit Court, W. D. Pennsylvania. May Term, 1853.

STATUTES — TITLE OF LAWS — OFFENSES AGAINST NATURALIZATION LAWS—FORGERY OF CERTIFICATE.

1. The title of an act of congress, when at variance with its provisions, deserves no consideration, though it may sometimes serve to explain a doubtful meaning of part of it.

2. Defendant was indicted under the thirteenth section of the act of congress of March 3, 1813 [2 Stat. 811], for forging, etc., a certificate of naturalization. Held, that the penalties provided in that section applied to that indictment, and that the district court had jurisdiction.

IRWIN, District Judge. The defendant was indicted in the district court, at May term last, "for wilfully and feloniously passing and uttering on the 11th of October, 1852, as true and genuine, a false, forged and counterfeit certificate of citizenship, purporting to be issued pursuant to the laws of the United States, and attesting that a certain John Gray had been admitted to become a citizen of the United States, he at the same time being an alien and a subject of the queen of Great Britain and Ireland." At the same term the court was moved to quash the indictment for the following reasons: (1) Because the district or circuit courts of the United States have no jurisdiction of the offence charged in said indictment. (2) No offence of the nature and character as alleged in said indictment is created by any act of congress. (3) Because said indictment charges the said alleged offence to be a felony. These points being new, and involving important matters, were removed to the circuit court for its opinion.

The offence charged is supposed to be em-

braced by the thirteenth section of the act of congress of the 3d of March, 1813, entitled "An act for the regulation of seamen on board the public and private vessels of the United States." That section is in the following words: "Sec. 13. And be it further enacted, that if any person shall falsely make, forge, or counterfeit, or cause or procure to be falsely made, forged, or counterfeited, any certificate or evidence of citizenship referred to in this act; or shall pass, utter, or use as true, any false, forged or counterfeited certificate of citizenship, or shall make sale or dispose of any certificate of citizenship to any person other than the person for whom it was originally issued, and to whom it may of right belong, every such person shall be deemed and adjudged guilty of felony; and on being thereof convicted by due course of law, shall be sentenced to be imprisoned and kept to hard labor for a period of not less than three, nor more than five years, or be fined in a sum not less than five hundred dollars, nor more than one thousand dollars, at the discretion of the court taking cognizance thereof."

From its having been intimated that the decision of this case will determine many other prosecutions of a similar nature with that now pending, the court has given the points certified full consideration. It has rarely happened in acts of congress, that subjects have been introduced of a nature widely different from that expressed in the title and it is conceded that if the several sections of an act can be reconciled with each other, and with the single purpose of legislation, as indicated in the title, that it would be wrong to infer that congress intended to embrace more than that purpose, although it may contain words susceptible of a different construction.

Before and during the last war with Great Britain, the impressment of seamen from American vessels, was a constant topic of discussion and controversy, which congress prospectively deemed it expedient to prevent, by passing the act of the 3d of March, 1813, which, with certain exceptions, makes it unlawful, after the war, to employ on board the public and private vessels of the United States, any persons except their own citizens, native or naturalized, and not the latter unless they should produce to the commander of the vessel, or the collector of the customs, a certified copy of the act by which he shall have been naturalized, the naturalization, and the time thereof.

The indictment, it is supposed, cannot be sustained by the thirteenth section of the act, for that, by looking to its general scope, subject-matter, and title, it must refer to seamen situated as the first eleven sections refer to, and to no other persons, and that although the words, "If any person shall falsely make, forge," etc., might be broad enough to include others than seamen, if standing unconnected with the particular subject of legislation, yet if connected with that subject, they should be so construed as to harmonize with it, without enlarging their meaning beyond the obvious provision of the act. and that to effect this object nothing more is necessary than to introduce the word "such" after the word "any," at the beginning of the section, and that the word "such" was probably accidentally omitted in framing the act.

If this were the only difficulty, the argument, if not conclusive, would be entitled to great weight; but it is proper to give effect to all the material words of one section of a statute, if they can be reconciled with or have an obvious reference to the words or enactment of another section, and whenever this can consistently be done, we are not at liberty to presume that congress intended to qualify or restrain the only meaning which the words employed naturally and grammatically import. Following this rule, and connecting the twelfth and thirteenth sections of the act, it will be apparent that the words in the thirteenth section, "If any person shall make, forge," etc., are intended to be general in their operations, and not confined to seamen employed in the public and private vessels of the United States.

The twelfth section provides: "Sec. 12. And be it further enacted, That no person who shall arrive in the United States, from and after the time when this act shall take effect, shall be admitted to become a citizen of the United States, who shall not for the continued term of five years next preceding his admission as aforesaid have resided within the United States, without being at any time during the said five years, out of the territory of the United States."

The act of 1813 is the only one purporting to be general in its features, which requires a continued residence of five years, preceding admission to citizenship, a provision, it may be assumed, introduced as the best evidence of bona fide expatriation, and probably not admitting, by construction, a temporary absence, during the five years, out of the territory of the United States, which construction would include all persons besides seamen, who left the territory upon business for a temporary period. But to show that any temporary absence for any purpose, during the five years, would disqualify from naturalization, the twelfth section further provides that the alien must have resided in the United States, "*without being at any time during the said five years, out of the territory of the United States.*" It is not improbable that, to get rid of the injury and inconvenience which a general application of the words in italics might produce, a disposition was felt and perhaps judicially sanctioned, to limit the act of 1813 to seamen alone, and if so, and the intention of congress had not thereby been misinterpreted, there would not have been any necessity for any further legislation on the subject. But

to show that such could not have been the intention of congress, the act of the 26th of June, 1848, was passed, by which the words in italics were repealed, so that, after that time, there could be no foundation for an opinion, that the twelfth section embraced only a particular class of persons. Connecting it, then, with the thirteenth section, we cannot avoid the conclusion that the penalties presented in the latter apply to the indictment before us, and that the district court of the United States has jurisdiction of the offence charged.

The title of an act of congress, when at variance with its provisions, deserves no consideration, though it may sometimes serve to explain a doubtful meaning of part of it. In this case the body of the act shows that its title is singularly narrow, and that, besides being intended for the "regulation of seamen on board the public and private vessels of the United States," it introduced important enactments, in addition to the pre-existing naturalization laws, and that these additions are its main features, restricted, indeed, in all its sections, except the twelfth and thirteenth, to seamen; but as regards them making provisions far beyond mere "regulations." The excepted sections, as the court have construed them, are consistent with the object and provision of the rest, and in accordance with what may fairly be presumed to be the intention of congress by the repealing act of 1848, from which it may be inferred that the words "continued residence," do not, as it would be most unreasonable they should, deny the privilege of naturalization to one who, after his application to be admitted a citizen, should find it necessary to go beyond the limits of the United States before the time prescribed for naturalization.

It is ordered that this opinion be certified to the district court.